**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BOBBY L. ROBINSON II ) | |
| 4121 11th Place North ) | |
| Arlington, VA 22201 ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | CASE NO. _____ |
| v. ) | |
| ) | |
| LLOYD J. AUSTIN III, *in his official* ) | |
| *capacity as Secretary of Defense* ) | |
| 1000 Defense Pentagon ) | |
| Washington, D.C. 20301-1000 ) | |
| ) | |
| *and* ) | |
| ) | |
| FRANK KENDALL III, *in his official* ) | |
| *capacity as Secretary of the Air Force* ) | |
| 1670 Air Force Pentagon ) | |
| Washington, DC 20330-1670 ) | |
| ) | |
| *Defendants*. ) | |

## COMPLAINT

**(APA Review of Final Decision of the Air Force Board for Correction of Military Records)**

### JURISDICTION AND VENUE

1.      This action seeks review of an April 18, 2019 final decision of the Air Force Board for

Correction of Military Records (AFBCMR), granting in part and denying in part Plaintiff's

application to correct his records. The AFBCMR's decision is final agency decision under the

Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*

2.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331,

federal question jurisdiction. Plaintiff raises claims under federal statutes and Department of the

Air Force regulations.

3.      The Act of Congress upon which federal question jurisdiction rests is 10 U.S.C. § 1552 which authorizes and governs the AFBCMR. Under the APA, the Court may set aside decisions of the AFBCMR that are arbitrary, capricious, unsupported by substantial evidence, or otherwise contrary to law or mandatory procedure.

4.      This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

5.      Venue in this Court is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391 *et seq*.

## THE PARTIES

6.      Plaintiff is a United States citizen, is a retired Air Force colonel. He resides at the address provided in the caption above.

7.      Defendant Lloyd J. Austin III is the Secretary of Defense. He is the head of the Department of Defense, and exercises authority, direction, and control over the Department of Defense and the AFBCMR. Defendant Austin performs a significant amount of his official duties within this judicial district.

8.      Defendant Frank Kendall III is the Secretary of the Air Force. He exercises authority, direction, and control over the Air Force, and he has the authority to review and accept the AFBCMR's recommendation. Defendant Kendall performs a significant amount of his official duties within this judicial district.

## STATUTE OF LIMITATIONS AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      In April 2018, Plaintiff filed an application with the AFBCMR, requesting various records corrections under 10 U.S.C. § 1552.

10.     On April 18, 2019, the AFBCMR issued a final decision in which it denied in part, and granted in part, Plaintiff's application.

11.     Plaintiff has exhausted his administrative remedies and this matter is ripe for judicial review.

12.     Pursuant to 28 U.S.C. § 2401(a), Plaintiff's claims must be made within six years of accrual.

13.     Plaintiff's clams accrued on April 18, 2019, when the AFBCMR issued a final decision on Plaintiff's application.

14.     Plaintiff's claims are timely before this Court.

## FACTS

**Plaintiff's Disability Evaluation System Processing**

15.     Plaintiff entered active-duty service on May 28, 1986.

16.     Plaintiff entered the USAF as a Second Lieutenant after graduating from the United States Air Force Academy in May 1986.

17.     He served nearly twenty-four years on active duty before retiring on March 31, 2010.

18.     He was progressively promoted through the ranks and, by 2006, was serving as a lieutenant colonel (O-5).

19.     In the Fall of 2006, Plaintiff was selected to be the Commander of the Bagram Provincial Reconstruction Team (PRT) in Afghanistan, filling an in-lieu-of billet for the United States Army.

20.     He successfully completed mandated Combat Skills Training (CST) at Fort Bragg from January to March 2007 before deploying to Bagram, Afghanistan on March 23, 2007.

21.     Before his deployment, he was in excellent physical and mental health as evidence by over 20 years of annual flight physicals and assessments.

22.     While deployed to Afghanistan, he conducted over 112 outside-the-wire ground combat convoy missions wearing Individual Body Armor (IBA) and a Kevlar helmet, riding in HMMWs ("Humvees").

23.     On October 27, 2007, he was medically evacuated from Afghanistan to Landstuhl Regional Medical Center (LRMC) with severe right-side neck pain radiating down his right arm and wrist.

24.     He was later returned to Bagram but was again medically evacuated to LRMC on or about January 2, 2008 due to worsening cervical pain and radicular symptoms.

25.     On or about January 12, 2008, he was returned to the United States for continuous medical care for his condition.

26.     His symptoms continued to worsen, and he was entered into the Wounded Warrior Program in March 2008.

27.     Plaintiff applied for voluntary retirement on November 18, 2008 with a retirement date set for March 31, 2009.

28.     In or about late 2008, Plaintiff was referred to the Disability Evaluation System (DES) to evaluate his fitness for duty.

29.     At the time, he was entered into the Pilot Joint DoD/Veterans Affairs DES process that would later become the Integrated Disability Evaluation System (IDES) that the military branches currently utilize.

30.     Among other new features, the program integrated the VA claims process into the DES and the VA now determined the disability percentages under the Veterans Affairs Schedule for Rating Disabilities (VASRD) that applied to conditions the Air Force Physical Evaluation Board (PEB) deemed to be unfitting.

31.    The Air Force DES was also governed by the provisions of Air Force Instruction (AFI) 36-3212, *Physical Evaluation for Retention, Retirement, and Separation* (Nov. 27, 2009).

32.    The DES process begins with a Medical Evaluation Board (MEB) which examines the documentation and recommends either that the service member be returned to active duty or that the member be referred to the PEB for a fitness determination. AFI 36-3212, ¶ 2.2.

33.    Under the Pilot DES program, the member underwent Veterans Affairs Compensation and Pension (C&P) medical examinations around the time the member was undergoing the MEB phase of the process.

34.    A PEB is a fact-finding body tasked with investigating the nature, origin, degree of impairment, and probable permanence of the service member's physical or mental condition. AFI 36-3212, ¶¶ 3.1; 3.8.

35.    "The disability system provides for two PEBs: an Informal PEB and a Formal PEB." *Id.* ¶ 3.1. The IPEB offers the service member no hearing, but considers only medical and personnel records, as well as other appropriate documentation. *Id.* ¶ 3.33. A member may contest IPEB findings to a formal PEB (FPEB), which provides a full and fair hearing on the same issues.

36.    The PEB determines whether a member is "fit" or "unfit" for continued duty. If the PEB "finds a member unfit, it recommends appropriate disposition based on the degree of impairment caused by the disabling condition, the date incurred, and the member's line of duty status." *Id.* ¶ 3.1. If the PEB finds the member fit for duty, the member will be returned to duty. *Id.* ¶ 3.29.

37.    Under the Pilot DES program, if the PEB found the conditions under its consideration to be unfitting, the board's determination would be forwarded to the DVA for a ratings determination using the VASRD.

38.     Conversely, if the PEB found the member fit for duty, the case would not be forwarded to the VA for a VASRD ratings determination.

39.     If the unfitting disabilities reach a combined VASRD rating of over 30%, the member will be entitled to a disability retirement under 10 U.S.C. § 1201. *See* AFI 36-3212, Table 3.1.

40.     If the unfitting disabilities reach a combined VASRD rating below 30%, the member will be entitled to severance pay under 10 U.S.C. § 1203 and will not receive any retirement benefits. *Id.*

41.     Notably, for unfitting conditions, the PEB determines whether any of the unfitting defects or conditions was combat related, as defined by 26 U.S.C. § 104. *See id.* ¶¶ 3.26; 3.30.5; 3.30.6.

42.     A favorable combat-related determination entitles the member to tax-free military disability pay. *Id.* ¶ 3.27.

43.     Relevant here, the PEB must make a combat-related disability determination for "instrumentality of war" meaning that "the member incurred the physical defect or condition in line of duty as the result of an instrumentality of war during a period of war, and that defect or condition, standing alone, makes the member unfit." *Id.* ¶ 3.26.2; *see also id.* ¶ 3.27.2.1.4.

44.     An "instrumentality of war" is defined as:

> A vehicle, vessel, or device designed primarily for Military Service and intended for use in such Service at the time of the occurrence of the injury. It may also be a vehicle, vessel, or device not designed primarily for Military Service if use of or occurrence involving such a vehicle, vessel, or device subjects the individual to a hazard peculiar to Military Service. This use or occurrence differs from the use or occurrence under similar circumstances in civilian pursuits. There must be a direct causal relationship between the use of the instrumentality of war and the disability, and the disability must be incurred incident to a hazard or risk of the service.

*Id.* Attach. 1.

45.     Notably, "The PEBs will presume a member fit if he or she has been able to do his or her duty satisfactorily in the 12 months before a scheduled retirement." *Id.* ¶ 3.17.

46.    However, this presumption may be overcome if:

    3.17.1. Within the presumptive period an acute, grave illness or injury occurs that would prevent the member from performing further duty if he or she were not retiring; or

    3.17.2. Within the presumptive period a serious deterioration of a previously diagnosed condition, to include a chronic condition, occurs and the deterioration would preclude further duty if the member were not retiring; or

    3.17.3. The condition for which the member is referred is a chronic condition and a preponderance of the evidence establishes that the member was not performing duties befitting either his or her experience in the office, grade, rank, or rating before entering the presumptive period. When there has been no serious deterioration within the presumptive period, the ability to perform duty in the future shall not be a consideration.

*Id.* ¶¶ 3.17.1–3.

47.    In December 2008, Plaintiff filed a pre-discharge application for VA compensation, claiming service connection for, among other conditions, chronic neck, elbow, back, shoulder, knee and hand pain, numbness of thumb, insomnia, depression, and fibromyalgia.

48.    The Air Force initiated a Medical Evaluation Board (MEB) in or about January 2009.

49.    In the January/February 2009 timeframe, the DVA conducted initial C&P examinations on Plaintiff.

50.    On or about March 27, 2009, Plaintiff was placed on medical hold for disability processing. The medical hold was set to expire on October 31, 2009.

51.    During MEB proceedings, a physician wrote a medical summary that stated, "It is fairly clear that this member has developed symptoms consistent with *a chronic pain syndrome*. This is focused within the cervical region of the spine. No specific radicular nerve component is identified although there are peripheral nerve symptoms. No definitive diagnosis has been established in spite of multiple testing and multiple specialty evaluations." (emphasis added).

52.     The physician continued to state that "Without a definitive diagnosis, his prognosis remains guarded. Although improvement is hoped for, I don't believe it is likely and will not likely resolve without significant sequelae. It is very evident that it has significantly impacted all aspects of his life and that he would not be able to continue to function in his current job assignment or reassignment."

53.     The physician noted diagnoses of chronic cervicalgia, chronic myalgia, and chronic fatigue.

54.     On August 7, 2009, Plaintiff's commander authored a commander's impact statement that stated his medical condition prohibited him from performing his primary duties and recommended that he be found unfit for duty.

55.     On August 25, 2009, the MEB determined that Plaintiff's medical condition warranted referral to the Informal Physical Evaluation Board (IPEB). Although the MEB physician clearly noted a definitive diagnosis had not been determined, the MEB report listed cervicalgia, lesion of ulnar nerve, and disturbance of skin sensation as the established diagnoses and findings.

56.     On or about September 2, 2009, the IPEB listed diagnoses of "cervicalgia" and "bilateral ulnar nerve entrapment" as "conditions that can be found unfitting but are not currently compensable or ratable."

57.     The IPEB indicated:

> [Y]ou have medical restrictions that would normally be incompatible with the rigors of military service. The Board notes you had an approved retirement date of 1 Apr 09, which was revoked for referral into the Disability Evaluation System (DES). In accordance with AFI36-3212, *Physical Evaluation/or Retention, Retirement, and Separation,* para. 3.17, the Board applied the Presumption of Fitness and has determined your medical condition does not overcome the presumption. Revocation of voluntary retirement orders for purposes of referral into the DES does not negate application of the presumption (DODI 1332.28, E3.P3.5.2.l). The Informal Physical Evaluation Board recommends you be returned to duty to proceed with your scheduled retirement.

58.     Plaintiff disagreed with the IPEB's findings and requested a formal PEB hearing, arguing

that the evidence was sufficient to overcome the presumption of fitness the IPEB applied.

59.     His request for a formal PEB hearing was denied on or about September 15, 2010.

60.     On March 31, 2010, Plaintiff received an honorable discharge and was voluntarily retired

with 23 years, 10 months, and 3 days of active service.

61.     On or about March 10, 2011, Plaintiff received a rating decision from the VA. In relevant

part, the decision awarded him 0% for "chronic pain syndrome (also claimed as fibromyalgia)"

(VASRD code 5099-5025); 0% for "degenerative disc disease of the cervical spine" (code 5242);

and 10% for "right hand pain/numbness" (code 8799-8715).

62.     Over the course of the next eight years, Plaintiff challenged these VA findings, relying in

large measure on pre-separation evidence of the existence and severity of his chronic pain

syndrome.

63.     Eventually, the VA corrected its March 2011 rating decision on November 27, 2017,

assigning 100% for "chronic fatigue syndrome, previously evaluated as fibromyalgia (previously

rated as chronic pain syndrome) and secondary depression" effective April 1, 2010—the day

after Plaintiff retired.

**Plaintiff's AFBCMR Application**

64.     On April 25, 2018, Plaintiff applied *pro se* to the AFBCMR, noting on his DD Form 149

that the date of discovery was November 27, 2017.

65.     Plaintiff asserted four errors and injustices, each clearly identified by sub-headers

supported by arguments and evidence.

66.     *First*, he argued that the IPEB erroneously decided that he had not overcome the

presumption of fitness.

67.     Plaintiff referenced numerous pieces of evidence demonstrating that he was physically unfit to perform the duties because there was a serious deterioration of a chronic condition, and the deterioration would have precluded further duty if the member were not retiring. *See* AFI 36-3212, ¶ 3.17.2.

68.     *Second*, he argued that the IPEB erred because his unfitting conditions were both ratable and compensable, warranting 100% permanent disability retirement.

69.     He argued, in relevant part, that the evidence demonstrated that chronic fatigue syndrome was the more appropriate diagnosis, with a VASRD rating of 100%.

70.     Plaintiff's argument relied on pre-separation medical evidence that he was diagnosed with a chronic pain syndrome and exhibited clear symptoms of chronic fatigue syndrome.

71.     He further presented evidence that the condition was erroneously initially rated 0% by the VA in March 2011 but was eventually corrected—after years of persistent effort by Plaintiff—to 100% with an effective date of April 1, 2010.

72.     Plaintiff made a similar argument about his diagnosed bilateral ulnar nerve entrapment.

73.     *Third*, Plaintiff argued that the unfitting conditions should be designated as combat-related, thereby making him eligible for Title 26 tax benefits.

74.     He asserted that his unfitting conditions fell within the ambit of the instrumentality-of-war provisions set forth in AFI 36-3212.

75.     He argued that the IBA he was wearing and the HMMWV tactical vehicles in which he conducted combat convoy missions met the definition of instrumentalities of war and that medical evidence from the combat theater established a direct causal relationship to his unfitting conditions.

76.    Plaintiff cited numerous pieces of medical evidence that supported his assertion that there was a nexus between his wearing of IBA and traveling in HMMWVs caused the symptoms that should have been deemed unfitting.

77.    *Fourth*, Plaintiff argued that he should be retired in the grade of colonel (O-6).

78.    Plaintiff asserted that he had been selected for promotion to colonel (O-6) by a promotion selection board that was convened on December 1, 2009 and argued he would have been promoted to O-6 on November 1, 2010.

79.    According to AFI 36-3212, para. 5.15.4, "Members who are retired on or after 23 Sep 96, may be retired in the regular or reserve grade to which they had been selected and would have been promoted, had it not been for the physical disability for which they were retired."

80.    Plaintiff argued, in effect, he would have been promoted to O-6 because he was selected for promotion but was unable to accept a promotion due to his physical disabilities.

**Advisory Opinions and Plaintiff's Response**

81.    The AFBCMR requested advisory opinions from two separate offices of primary responsibility (OPRs), one from the Chief of Officer Promotion Management at the Department of the Air Force Headquarters Air Force Personnel Center (AFPC/DP2SP) [hereinafter "DP2SP Advisory Opinion"] and another from Special Actions at Headquarters Air Force Personnel Center (HQ AFPC/DPFDD [hereinafter "DPFDD Advisory Opinion"].

82.    By its own terms, the DP2SP Advisory Opinion addressed only Plaintiff's request for promotion to colonel.

83.    The opinion concluded that Plaintiff was selected for promotion to colonel on December 1, 2009 and "[h]ad he remained on active duty, he would have pinned on November 1, 2010."

84.     The opinion opined that "[s]hould the board change the applicant's retirement to a disability retirement, he would be entitled to retire in the grade of colonel."

85.     The DP2SP Advisory Opinion based its analysis on 10 U.S.C. § 1372 which provides, in relevant part, that

> any member of an armed force who is retired for physical disability under section 1201 or 1204 of this title, or whose name is placed on the temporary disability retired list under section 1202 or 1205 of this title, is entitled to the grade equivalent to the highest of . . . [t]he permanent regular or reserve grade to which he would have been promoted had it not been for the physical disability for which he is retired and which was found to exist as a result of a physical examination.

86.     The DPFDD Advisory Opinion purported to address Plaintiff's arguments for a disability retirement with a 100% VASRD rating for chronic fatigue syndrome and a combat-related finding.

87.     The DPFDD Advisory Opinion recommended "a partial approval of the applicant's [sic] with a Permanent Retirement (PR) with a combined compensable disability of 10%; (5242 - Cervicalgia/disc herniation and spurring of the cervical spine at 0%; and 8799-8715 - right hand pain/numbness at 10% as indicated on the attached DVA rating code sheet, dated 10 March 2011.) [sic] with a designation of combat zone only."

88.     The DPFDD Advisory Opinion appeared to incorporate the analysis of an unnamed "medical reviewer" who "found enough evidence to show [Plaintiff] was solely unfit for Cervicalgia (disc herniation and spurring of the cervical spine) and right hand pain/numbness at the time of his medical board."

89.     The DPFDD Advisory Opinion then purported to quote the anonymous medical reviewer as stating, "At the time of his board, the member was assigned to a patient squadron and had been unable to perform any of his primary duties for several months. As a result of his inability

to perform many of the basic tasks of his AFSC, the member overcame the presumption of fitness."

90.     The DPFDD Advisory Opinion did not provide a copy of any document authored by the anonymous medical reviewer.

91.     DPFDD Advisory Opinion appeared to base its recommendations for a 10% disability rating for right hand pain/numbness and a 0% rating for cervicalgia/disc herniation and spurring of the cervical spine on the percentages assigned in the March 10, 2011 VA ratings decision. Indeed, the author attached the VA ratings decision to the advisory opinion.

92.     The DPFDD Advisory Opinion appeared to focus on a "snapshot in time" analysis to recommend denial of Plaintiff's argument for a 100% disability for chronic fatigue syndrome.

93.     The opinion stated:

> Physical Evaluation Boards must determine whether an airman's medical condition(s) renders them unfit for duty and apply the rating best associated with the level of disability at the time of disability processing (*a snapshot in time*). Physical Evaluation Boards must determine whether an airman's medical condition(s) renders them unfit for duty and apply the rating best associated with the level of disability at the time of disability processing (a snapshot in time). Under the DVA system (Title 38, U.S.C), the member may appeal and be reevaluated over the years and their rating may be increased or decreased based on changes in the member's medical condition(s). However, an increase by the DVA years after separation from the service, does not warrant a change in the total compensable rating of the unfitting conditions awarded at the time of the member's separation.

94.     The DPFDD Advisory Opinion explained its recommendation for denial of Plaintiff's request for a combat-related finding with two sentences:

> As to the SM's contention for combat-related, in accordance with DoDI 1332.18, August 5, 2014, 44 APPENDIX 5 TO ENCLOSURE 3, the applicant's unfitting conditions currently do not qualify as "combat related". The fact that his symptoms were noted while deployed to Iraq [sic], there is no documentation to show a direct causal relationship that a [sic] specific combat related events led to his disabilities.

95.     In April 2021, Plaintiff requested all records upon which the AFPC/DPFDD Advisory

Opinion was based, including all documents related to the correspondence between the

AFBCMR and AFPC/ AFPC/DPFDD, the medical reviewer and documents relied upon, directly

or indirectly by the advisory opinion's author, Anna Stock.

96.     In March 2022, the Air Force responded with a collection of documents that did not

contain any report or correspondence from the "medical reviewer."

97.     On October 15, 2018, Plaintiff responded to both advisory opinions.

98.     Plaintiff argued that the "snapshot in time" rationale was inapplicable in his case because,

after nearly eight years of contesting the VA's findings, the VA had determined the effective

date of his unfitting disabilities to be April 1, 2010—the day after his retirement and the same

date as the "snapshot" of his disabilities the DPFDD Advisory Opinion used in its analysis.

99.     Plaintiff continued to argue, in effect, that the evidence his chronic pain syndrome (rated

analogous to chronic fatigue syndrome under the VASRD) was unfitting and warranted a 100%

VASRD rating was not merely evidence of a post-separation worsening of the condition but bore

upon the nature of his condition at the time of his separation, i.e. at the time of the "snapshot" to

which the DPFDD Advisory Opinion alluded.

100.    Plaintiff cited pre-separation records, such as the 2009 C&P examinations and the MEB's

diagnosis of "chronic pain syndrome," as evidence that his condition existed at the so-called

"snapshot in time" but had not been properly rated by the VA until 2017.

101.    Plaintiff stated, "Clearly, Chronic Fatigue Syndrome, rated at 100% at the time of

separation wound render me unfit for duty."

102.    Regarding the combat-related designation issue, Plaintiff argued that the DPFDD

Advisory Opinion's assertion that "there is no documentation to show a direct causal relationship

that a [sic] specific combat related events led to his disabilities" was erroneous and failed to

address the evidence submitted that directly contradicted the opinion.

103.     Plaintiff again cited numerous pieces of evidence supporting his argument that there was

a direct causal relationship between his body armor and HMMWVs and his unfitting physical

disabilities.

**AFBCMR Decision**

104.     On April 18, 2019, the AFBCMR issued a Record of Proceedings indicating that it had

granted partial relief on Plaintiff's application.

105.     The document generally set forth the basic facts of the case, summarized the advisory

opinions, and Plaintiff's response.

106.     The totality of the AFBCMR's rationale for granting partial relief is expressed in a single

paragraph:

> After reviewing all Exhibits, the Board agrees with the recommendations of
> AFPC/DPFDD and AFPC/DP2SP and adopt the rationale expressed as the basis for
> its decision the applicant has been the victim of either an error or an injustice.
> However, for the remainder of the applicant's request, the evidence presented did
> not demonstrate an error or injustice, and the Board therefore finds no basis to
> recommend granting that portion of the applicant's request. Therefore, the Board
> recommends correcting the applicant's records as indicated below.

107.     The AFBCMR adopted the rationale of the advisory opinions in lieu of providing its own

independent analysis.

108.     The AFBCMR recommended the relief previously recommended by the advisory

opinions, that Plaintiff's records be corrected to show:

> a. On 30 March 2010, he was found unfit to perform the duties of his office, rank,
> grade or rating by reason of physical disability incurred while entitled to receive
> basic pay; that the diagnosis in his case is Cervicalgia/disc herniation and spurring
> of the cervical spine, a condition which is rated at a compensable percentage of 0
> percent under Veterans Administration Schedule for Rating Disabilities (VASRD)
> code 5242 and right hand pain/numbness, a condition which is rated at a

compensable percentage of 10 percent under VASRD code 8799-8715, with a designation of combat zone only, that the disabilities were permanent; that the disabilities were not due to intentional misconduct or willful neglect; that the disabilities were not incurred during a period of unauthorized absence; that the disabilities were not incurred during a period of national emergency; and that the disabilities were not received in line of duty as a direct result of armed conflict.

b. He was not released from active duty on 31 March 2010 and retired for length of service on 1 April 2010, but on 1 April 2010, he was permanently retired by reason of physical disability with a compensable disability rating of 10 percent[.]

c. He retired in the grade of colonel, in accordance with Title 10, United States Code, Section 1372.

109.    The AFBCMR then stated, "regarding the remainder of the applicant's request, the Board recommends the applicant be informed the evidence did not demonstrate material error or injustice and the application could only be reconsidered upon receipt of relevant evidence not already considered by the Board."

110.    On or about February 12, 2020, Plaintiff was notified that the Air Force had issued a new DD 214 indicating that he had been separated for reason of disability. He was further notified that the Air Force had issued special orders retroactively relieving him from active duty and, effective April 1, 2010, permanently retired in the grade of colonel "per AFI 36-3212 and 10 U.S.C. § 1372."

111.    On October 14, 2020, the Defense Finance and Accounting Service (DFAS) notified Plaintiff that the corrections directed by the AFBCMR resulted in no change to the amount of retired pay he would receive.

**CLAIM FOR RELIEF**

**Count I: The AFBCMR's 2019 final decision is arbitrary, capricious, contrary to law, an abuse of discretion and unsupported by substantial evidence in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).**

112.    The preceding paragraphs are incorporated herein by reference.

113.    The AFBCMR must address all non-frivolous arguments placed before it. *See Poole v. Harvey*, 571 F. Supp. 2d 120, 126 (D.D.C. 2008).

114.    An AFBCMR decision violates the APA if it "entirely fail[s] to consider an important aspect of the problem." *See Gilbert v. Wilson*, 292 F. Supp. 3d 426, 434 (D.D.C. 2018).

115.    The AFBCMR cannot fail to respond to favorable evidence that could well have supported a different decision. *See Hill v. Geren*, 597 F. Supp. 2d 23, 26 (D.D.C. 2009).

116.    The AFBCMR's decision must be supported by "substantial evidence." *Hill*, 597 F. Supp. 2d at 29. "Evidence is not substantial if it is overwhelmed by other evidence, or if it constitutes mere conclusion." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1581 (10th Cir. 1994).

117.    The Board's action must be supported by reasoned decision making and if the Board's "explanation for its determination . . . lacks any coherence," the court "owe[s] no deference to [the Board's] purported expertise because we cannot discern it." *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014) (quoting *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006)).

118.    The Board violates the APA if it renders a decision by adopting an advisory opinion that did not comply with the APA and the Board does not undertake an independent review untainted by the flawed advisory opinion. *See McDonough v. Stackley*, 245 F. Supp. 3d 1, 2 (D.D.C. 2017).

119.    The DPFDD Advisory Opinion's rationale and recommendations that the AFBCMR adopted in lieu of providing its own independent review is arbitrary, capricious, contrary to law and unsupported by substantial evidence.

120.    The DPFDD Advisory Opinion arbitrarily applied a "snapshot in time" standard and arbitrarily ignored favorable evidence of the symptoms and severity of Plaintiff's unfitting conditions as they existed at the time of his separation.

121.    The DPFDD Advisory Opinion arbitrarily and capriciously failed to weigh, consider, or sufficiently grapple with evidence that Plaintiff's chronic pain syndrome (rated later by analogy as chronic fatigue syndrome) existed at the time of his separation, made him unable to perform his duties, and should have been rated at 100%.

122.    The DPFDD Advisory Opinion arbitrarily and capriciously relied on the March 10, 2011 VA ratings decision to recommend that Plaintiff's records be corrected to reflect 0% for "chronic pain syndrome (also claimed as fibromyalgia)"; 0% for "degenerative disc disease of the cervical spine"; and 10% for "right hand pain/numbness."

123.    The DPFDD Advisory Opinion failed to grapple with or respond to favorable evidence that Plaintiff had successfully appealed the diagnoses and ratings contained in the March 2011 VA rating decision based on pre-separation medical evidence and evidence that otherwise bore upon the existence his chronic fatigue syndrome and its impact on Plaintiff's ability to reasonably perform his duties.

124.    The DPFDD Advisory Opinion and, by adoption, the AFBCMR's rationale for denying Plaintiff's request for a Title 26 combat-related designation for his unfitting conditions is arbitrary, capricious, an abused of discretion, contrary to law, and unsupported by substantial evidence.

125.    The DPFDD Advisory Opinion failed to respond to Plaintiff's non-frivolous argument that his unfitting conditions fell within the ambit of the instrumentality-of-war category of combat-related disabilities.

126.    To the extent that it conducted any analysis that would pass APA muster, the DPFDD Advisory Opinion's reference to the requirement for a direct causal relationship between Plaintiff's disabilities and "a specific combat related events [sic]" irrelevant to whether the

disabilities were caused by an instrumentality of war, which does not require such a "specific combat related event."

127.    The DPFDD Advisory Opinion's suggestion that there was "no documentation" to support Plaintiff's request for a combat-related determination is unsupported by substantial evidence and arbitrarily and capriciously ignores favorable evidence Plaintiff had submitted to support his case.

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

(A)    Hold unlawful in their entirety and set aside the AFBCMR's 2019 final decision;

(B)    Enter judgment in favor of Plaintiff on all counts of this complaint;

(C)    Remand the matter to the AFBCMR for further actions in accordance with the Court's findings, decision, and order;

(D)    Upon proper application, award Plaintiff attorney fees under the Equal Access to Justice Act; and

(E)    Award such other relief as the Court deems appropriate.


                            Respectfully submitted,

                            */s/Brian D. Schenk*
                            Brian D. Schenk
                            (MN #0391577)
                            Midwest Military & Veterans Law, PLLC
                            400 S. 4th St, Ste. 401-510
                            Minneapolis, MN 55415
                            Ph: (202) 557-6570
                            Email: brian@militaryandveteranslaw.com

Dated: August 29, 2022